THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HYDROFLOW USA LLC,<br><br>               Plaintiff,<br><br>   v.<br><br>HYDROTECH SOLUTIONS LLC,<br><br>               Defendant. | CASE NO. C21-0714-JCC<br><br>ORDER |

This matter comes before the Court on Defendant HydroTech Solutions, LLC's Motion to Dismiss, Abate, or in the Alternative, Transfer Venue. (Dkt. No. 16.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion in part and DENIES it in part for the reasons explained below.

### I.    BACKGROUND

This dispute arises from an April 1, 2016 Distributor Agreement (the "Agreement") under which Plaintiff HydroFLOW USA LLC ("Supplier"), a Washington LLC, granted Defendant HydroTech Solutions LLC ("Distributor"), a Texas LLC,[1] the right to market and sell

---

[1] The Court notes that, although Supplier has sued HydroTech Solutions, LLC, a Texas limited liability company, its Agreement is with HydroTech Solutions, Inc., a Texas corporation. (*Compare* Dkt. No. 9 at 1, *with* Dkt. No. 9-1 at 2.)

Supplier's products in Texas and Oklahoma. (*See* Dkt. Nos. 9 at 1, 9-1 at 2–3, 18.)

In spring 2021, tensions within Distributor's leadership spilled into a dispute with Supplier, with Distributor on one side and a dissident faction of its leadership aligned with Supplier on the other. (*See* Dkt. Nos. 9-2 through 9-4.)

Specifically, Distributor stripped authority from its then-president Brent Mulliniks due to his alleged misconduct. (*See* Dkt. No. 9-3.) Mulliniks, however, had long handled Distributor's relationship with Supplier, which now refused to continue dealing with Distributor unless Mulliniks was reinstated. (*See* Dkt. Nos. 9-4, 9-5.) On April 27, 2021, Supplier's counsel emailed Distributor's counsel a letter stating that the Agreement would terminate unless Distributor met Supplier's demands by April 30, 2021. (*See* Dkt. No. 9-5.) Supplier's ultimatum invoked an Agreement clause authorizing termination upon written notice if there is a personnel change in Distributor's leadership; Supplier asserts that Mulliniks's ouster triggered this termination right. (*Id.*)[2]

On May 3, 2021, Distributor sued Supplier and Mulliniks in Texas state court, bringing various business tort, contract, and trade secret claims against them and seeking declaratory judgment against Supplier that the Agreement remains in force. (*See generally* Dkt. No. 17 at 6–43 (Texas state court pleadings).) On May 10, 2021, the Texas state court entered a temporary restraining order barring Supplier from, among other things, contacting Distributor's customers regarding the sale of products under the Agreement. (*Id.* at 47–48.) Four days later, Supplier sued Distributor in state court in King County, Washington, seeking a declaratory judgment that Supplier had terminated the Agreement. (*See* Dkt. No. 1-1 at 4–7.) Distributor removed to this

---

[2] Distributor's instant motion does not present the issue of whether the April 27, 2021 notice is valid under the Agreement. (*But compare* Dkt. No. 9-5 (April 27, 2021 letter "[s]ent via email only" to counsel with the legend "ER 408 COMMUNICATION – FOR CONFIDENTIAL SETTLEMENT PURPOSES ONLY"), *with* Dkt. No. 9-1 at §§ 19, 24.4 (agreement provisions requiring communications to be sent by mail and specifying addressees for required notice), *and* Dkt. No. 11 at 9 ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment." (citation omitted)).)

Court based on diversity jurisdiction and Supplier amended its complaint to assert tort claims against three individuals affiliated with Distributor. (Dkt. Nos. 1, 9.)

As mentioned, Distributor's territory under the Agreement encompasses Texas and Oklahoma; since the Agreement's inception, Distributor has sold products as authorized by the Agreement. (Dkt. No. 17 at 2.) It has never done business in Washington other than purchasing products from Supplier to resell in Texas and Oklahoma. (*Id.* at 1–2.) The three Distributor-affiliated individual defendants sued by Supplier are two Texas residents and one California resident; Distributor's CEO also indicates that, of the seven primary witnesses involved in this dispute, five are in Texas (including Mulliniks) and one is in California. (Dkt. No. 17 at 3–4, 7.) The Court infers that the seventh witness is Supplier's CEO Tal Journo, who is in Washington. (*See* Dkt. No. 9-3 at 2.)

Discovery is underway in the Texas state court litigation; the parties have propounded written discovery, taken and defended depositions, and scheduled a mediation and contested hearings. (Dkt. Nos. 31-1, 36 at 4.)

## II.   DISCUSSION

### A.   First-to-File Doctrine

Distributor urges the Court to dismiss this case under the first-to-file rule. (Dkt. No. 16 at 5.) This is a doctrine of federal comity under which the court in a second-filed lawsuit has discretion to transfer, stay, or dismiss the later-filed case if a substantially similar case is pending in another district. *See, e.g.*, *In re Bozic*, 888 F.3d 1048, 1051–52 (9th Cir. 2018). As Supplier points out, though, because first-to-file is a doctrine of federal comity, it does not apply if the first case was filed in state court. *See, e.g.*, *Goldmanis v. Insinger*, 2014 WL 3739430, slip op. at 6 (W.D. Wash. 2014).

A similar doctrine articulated in *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942) permits a federal court to decline jurisdiction over a federal declaratory judgment case if a declaratory judgment case involving the same issues is already pending in state court. *See Gov't*

*Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998). By declining jurisdiction in such circumstances, federal courts discourage forum-shopping, avoid duplicative litigation, and avoid needlessly deciding state law issues. *Id.* Because the parties have not briefed this issue, however, the Court declines to resolve Distributor's motion on *Brillhart* grounds. Distributor's motion to dismiss is thus DENIED without prejudice.

**B.      Transfer of Venue**

The Court next addresses Distributor's request in the alternative to transfer venue. Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought." The purpose of § 1404 is to prevent wasted time, energy, and money and to protect litigants, witnesses, and the public from unnecessary inconvenience and expense. *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964). A motion to transfer under § 1404(a) requires the movant to show that (1) the action "might have been brought" in the transferee district; and (2) the transfer would be for the convenience of parties and witnesses, in the interest of justice. *Authentify Pat. Co., LLC v. StrikeForce Techs., Inc.*, 39 F. Supp. 3d 1135, 1148 (W.D. Wash. 2014). The latter step involves balancing numerous factors to determine if transfer is appropriate. *Id.*

1.      <u>Whether Supplier Could Have Filed this Case in the Northern District of Texas</u>

An action "might have been brought" in the transferee district if the transferee court would have proper subject matter jurisdiction, personal jurisdiction, and venue. *See Silver Valley Partners, LLC v. De Motte*, 2006 WL 2711764, slip op. at 1 (W.D. Wash. 2006) (citing *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960)). Distributor seeks transfer to the U.S. District Court for the Northern District of Texas. (Dkt. No. 16 at 7.) Supplier does not challenge venue or subject matter jurisdiction but argues that transfer is improper because it is not subject to personal jurisdiction in Texas. (Dkt. No. 30 at 10–11.)

That argument misses the mark. The question is whether *this* case that *Supplier filed* "might have been brought" in the Northern District of Texas. It is thus immaterial whether Texas

has personal jurisdiction over Supplier as long as it has personal jurisdiction over the Defendants that Supplier sued. *See e.g.*, *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 31 (3d Cir. 1993); *Silver Valley Partners*, 2006 WL 2711764, slip op. at 1 ("[T]he *defendants* must be subject to personal jurisdiction in the transferee district . . . ." (emphasis added)). Supplier cannot dispute that Texas Courts have personal jurisdiction over Distributor, a Texas LLC with its principal place of business in Dallas, Texas (Dkt. No. 9 at 1), or individual defendants who either reside in Texas or allegedly have strong ties there related to Supplier's claims, (Dkt. Nos. 9 at 2, 6–7, 17 at 3–4). Distributor is thus also wrong that the Court "cannot adequately evaluate the need to transfer this case . . . until the Texas trial court rules on the jurisdictional issue." (Dkt. No. 35 at 5.) The Court holds that this case "might have been brought" in the Northern District of Texas.

      2.     <u>Convenience and the Interest of Justice</u>

Determining whether transfer under § 1404(a) would be for the convenience of parties and witnesses and in the interest of justice involves an individualized, case-by-case consideration of convenience and fairness based on multiple factors. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). These include: (1) where the relevant agreements were negotiated and signed, (2) the state most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. *Id.* at 498–99.

      a.     <u>Relationship Between Location, the Parties, and the Facts</u>

The first, fourth, and fifth factors of this framework concern the level of geographic connection among the parties, the facts of the case, and the forum state versus the transferee district. *See Chen v. Pioneer Oil, LLC*, 472 F. Supp. 3d 704, 709 (N.D. Cal. 2020) (citing *id.*). Here, the Western District of Washington has little connection to Supplier's claims. Without

citing any supporting evidence or declarations, Supplier argues that transfer is improper because it negotiated the Agreement from Washington. (Dkt. No. 30 at 12.) While Distributor has the burden to show that transfer is proper, the Court need not credit Supplier's unsupported factual assertions. Even if Supplier did negotiate the Agreement in Washington, Distributor signed the Agreement through Mulliniks, a Texas resident. (*See* Dkt. Nos. 9-1 at 15, 17 at 7.) There also does not appear to be anything more than an incidental link between Washington and the facts from which Supplier's claims arise. Supplier alleges that a personnel change in Distributor's Texas-based leadership breached the Agreement and triggered the termination provision at issue. (Dkt. No. 9 at 5–6.) Supplier also alleges that Defendants tortiously interfered with Supplier's relationships with "customers throughout Texas, Oklahoma, and neighboring states." (Dkt. No. 9 at 6.) That Distributor purchased the products from Supplier in Washington is only incidental, since Supplier's lawsuit is based on what Defendants allegedly did in Texas and the surrounding area. This factor heavily favors transfer.

### b. *Familiarity with Governing Law*

The Agreement has a choice-of-law clause under which Washington law governs questions of validity, operation, interpretation, and construction of the Agreement. (Dkt. No. 9-1 at 13, § 20.) Both parties agree this factor tilts against transfer. (Dkt. Nos. 16 at 9, 30 at 12.) Tempering that conclusion, however, is that many of Distributor's business tort claims in the Texas case may be compulsory counterclaims in this litigation and could be subject to Texas law. (Dkt. No. 16 at 9.) Still, this factor favors retention.

### c. *Plaintiff's Choice of Forum*

Another factor to consider is the plaintiff's choice of forum. Courts give great weight to a plaintiff's choice of forum, especially where the chosen forum has strong ties to the dispute. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). As mentioned above, though, that is not the case here. Further, "[i]f there is any indication that plaintiff's choice of forum is the result of forum[-]shopping, plaintiff's choice will be accorded little deference." *Williams v. Bowman*, 157

F. Supp. 2d 1103, 1106 (N.D. Cal. 2001). If the plaintiff's lawsuit was "reactive," that could indicate its choice was the result of forum-shopping. *Cf. Volvo Constr. Equipment N. Am., LLC v. Clyde/West, Inc.*, 26 F. Supp. 3d 1033, 1038 (W.D. Wash. 2014) (conducting this inquiry in the context of the *Brillhart* doctrine mentioned above). In assessing whether a plaintiff engaged in forum-shopping, courts examine the sequence of events leading up to the filing of the case at issue, although the focus is not solely on timing. *Id.*

Here, Supplier advised Distributor in the April 27, 2021 letter that the Agreement would terminate on April 30 if Distributor failed to meet Supplier's demands. (*See* Dkt. No. 9-5.) Distributor filed the Texas lawsuit on May 3, 2021, seeking, among other things, a judicial declaration that the Agreement remained valid, notwithstanding Supplier's purported termination. (Dkt. No. 17 at 12–15, 23–24.) Adjudicating that declaratory judgment request would therefore resolve the same question presented in Supplier's current declaratory judgment claim, i.e., whether Supplier validly terminated the Agreement. Rather than answer that question through the Texas litigation, Supplier filed this lawsuit posing essentially the same question. (Dkt. Nos. 1-1 at 6, 17 at 3.) It did so shortly after a hearing in the Texas case where the state court entered a temporary restraining order to preserve the status quo. (Dkt. No. 17 at 45–48.) Although this Court does not find that Supplier's choice of forum is the result of forum-shopping, there are sufficient indicia of forum-shopping for the Court to conclude that the plaintiff's choice of forum deserves less weight than it otherwise might.

        d.   <u>Location of Witnesses and Evidence</u>

The Court agrees with Supplier that advances in e-discovery technology and electronic recordkeeping reduce the relative importance of this factor. (Dkt. No. 30 at 13.) Likewise, the use of video-conference technology may help mitigate costs associated with depositions. Still, for three reasons, this factor favors transfer. First, Supplier does not dispute that most witnesses in this case are in Texas. (Dkt. No. 17 at 3–4.) Second, the Court cannot assume that all depositions will occur by videoconference. Third, to the extent the case involves third-party

discovery, disputes over subpoenas could require litigating in the district where compliance with the subpoena is required. *See* Fed. R. Civ. P. 45(d)(1). Said differently, enforcing a subpoena could require the parties in this case to litigate a third lawsuit in federal court in Texas.

### e. Cost of Litigation

Supplier argues "[t]here is no difference in the cost of litigating in the two forums" because "[b]oth parties have retained counsel *in each forum* to act on their respective behal[ves]." (Dkt. No. 30 at 13) (emphasis added). The Court disagrees with the conclusion Supplier draws from this premise. That both parties have had to retain separate sets of counsel in Washington and in Texas suggests that fewer attorneys may be needed if the case is transferred. Transfer would also potentially obviate the need for Washington-based counsel to travel to Texas for any in-person depositions should the case remain here. This factor favors transfer.

### f. Totality of the Circumstances

Nearly all the relevant factors favor transfer. Only the Agreement's Washington choice-of-law clause and Supplier's choice of forum favor retention. Supplier's choice of forum, however, is due little weight as explained above. The Court thus holds that transfer would be for the convenience of parties and witnesses and in the interest of justice.

## III.   CONCLUSION

For the foregoing reasons, Distributor's motion (Dkt. No. 16) is GRANTED in part and DENIED in part. The above-captioned case is hereby TRANSFERRED to the U.S. District Court for the Northern District of Texas, Dallas Division.

DATED this 9th day of September 2021.

*[signature: John C. Coughenour]*

John C. Coughenour
UNITED STATES DISTRICT JUDGE